Good morning, Your Honors. Sean Perez for Mr. Gonzales. I only have two brief points that I'd like to make. The first is that the State failed to meet their burden of production under Step 2 of the Batson analysis. And the second is that the failure of the courts to engage in a comparative analysis cannot support a finding that the other reasons given for the excuses of two prior jurors would support a finding of good faith. Now, you're just challenging the one juror. Is that correct on appeal? Yes, Your Honor. But I believe under the analysis that the other two jurors and the reasons that they were stricken would have to be looked at in a determination of good faith. But I don't necessarily think that we even have to go that far because at Step 2, it was incumbent upon the State to produce some evidence. Now, I understand that that can be circumstantial and something that can be determined from the record. But in those cases where that determination is made, the prosecutor actually comes into court and says, hey, I've got these juror questionnaires and I've got these notes on juror number four, and, you know, I can't really remember the reason, but this looks like the reason. And then they look at the other reasons for these strikes and determine if that is in good faith. And, therefore, the absence of a reason is certainly not evidence of a pretextual strike. I think in this case, the district court relied on Yee v. Duncan to find that the petitioner did not meet his criteria. And so, in this case, there was no evidence of a pretextual strike. And so, in this case, it was not evidence of a pretextual strike. It was showing that there was purposeful discrimination or that the strikes were pretextual. However, Yee v. Duncan is based upon a reading of the record that included those notes. I mean, the prosecutor came forward with the note and said, well, this is just the words of the juror, which is what we have here. And we have a transcript that says, I don't like to judge anybody, but I can be fair and I'll follow the rules of the court. But the prosecutor never says that's why I struck them. I mean, we have the State coming in on appeal and saying, well, this could have been the reason. What do we do, counsel? One of the concerns I have in evaluating voir dire appeals is that we have to give some deference to the trial judge who was sitting there actually watching the voir dire. And the record can tell us the words that were spoken, but it doesn't say anything about the demeanor, how the prospective juror reacted to the questions. And here, although it's very terse, as I read the superior court judge's comments, when the Batson challenge was made, having watched the jury selection process, the trial judge essentially said, I don't see a problem here and denied the motion. Do we give any deference at all to what the trial court did? In this particular instance, and I think in most cases, earlier cases in California where they don't actually engage in some sort of analysis, and I think in this case in particular where defense counsel says, with respect, I believe it was to juror number four where they're talking about the reasonable doubt standard, counsel said, well, there were other jurors that were confused. Now, for review by this court or by any court of law … The trial court never really looked at anything. The trial court never went back to juror number 12 at all. I mean, it sort of was … But there were three other African Americans on the panel. Yes. Post that, I don't know, but even under … The transcript indicated that there were three other blacks remaining after the Batson challenge. Remaining after the Batson challenge. That may be correct, Your Honor. I don't recall at this point in time, but … Yes, Your Honor? Well, when you're done answering Judge Panter's question, I do have a question, and that's this. As I understand it, we're under the AEDPA, so we have to follow that standard. Is that right? Well, actually, Your Honor, I think under … in this case, and it escapes me at the moment, that we have to look at, or the district court has to look at the trial court record to determine whether it was a reasonable application of the facts. We're not … Right. But don't we have to decide that what the state court did, what the district court did, was contrary to, or an unreasonable application of clearly established precedent of the U.S. Supreme Court? Yes, Your Honor, we do. But in addition to that … Okay. Well, here's my question, but I wanted to get that on the table first. You know, if that's the standard, is there any Supreme Court precedent that would establish a person per se prohibition or per se violation of Batson when a prosecutor can't articulate a reason for the strike at Step 2? If … Your Honor, I believe that it would be Snyder v. Louisiana, if I'm not mistaken, that would have … that would, you know … Now you have me, Your Honor, as far as on that standard. Now I'm … Well, here's what's bothering me, just so you can address it any way you wish in your argument. What's bothering me is if we're under this standard that requires us to look just at violation of Supreme Court precedent, we could have a situation where if it were a federal direct appeal, we could make a supervisory rule and say if a prosecutor doesn't have any record of their reasons for a strike, we're going to reverse. But when it's a state prisoner and under the AEDPA, I don't think we have that option. And whatever we do has to be tied to what the Supreme Court has said, at least as I understand it. Well, Your Honor, I believe that this case … and my thinking is a little out there on the standard of review, but as I recall, this case would actually be outside of AEDPA, and we have to look at the record to determine whether there was a reasonable application of the facts, as opposed to just some sort of violation of Supreme Court law. I mean, we're still giving a review of the facts. We're not just basing it on their determination and saying, okay, they found the facts. I think that we have to look at this anew. And I think that's the court's question. Yes, thank you. Counsel, do you want to save some time for rebuttal? Yes, thank you. I'll save the battle some time. All right. We'll hear from the State. Thank you, Your Honor. Good morning, and may it please the Court. David Glassman, Deputy Attorney General for the respondent at the Lee here. I'd like to begin, Judge Gould, with your point, and that is the role that the AEDPA plays in this case. It is the role that the AEDPA plays in this case. It is an accurate statement of the law that we look to see what the Supreme Court has said on this subject. And as well, in response to the Court's question, we do not have any authority from the Supreme Court that would allow the drawing of a negative inference from a failure to recollect reasons in a Batson hearing. As for whether or not that was a sincere failure and whether or not sufficient documentation was provided to explain that failure, those are matters to be resolved in the trial court where the hearing was held. And when the prosecutor stated an inability to recollect to the extent that the defense wanted to test her memory or confront her with contrary information, there was an opportunity to do that there that the defense didn't avail itself of. However, that said, there is an aspect of this case, and it has appeared in a couple of other cases that I did want to address with the Court, and that is that the Court, while denying relief in Yee v. Duncan, says at page 900 that the failure to recollect allows a negative inference to be drawn. No authority is cited for that I don't believe there is any Supreme Court case law, and not Snyder v. Louisiana specifically, that says anything like that. And the district court also makes that point in this case. And the point that I wish to raise with the Court and wondered if the Court would address in a decision, hopefully it's a favorable decision, but maybe they won't address it if it isn't, is that if, in fact, there is a sincere failure to recollect, and that is the factual finding here, then it seems at least logically inconsistent and unfair to refer to that as an incriminating fact. If she is credible, she doesn't remember because she doesn't remember, and because there is no discriminatory motivation going on. And so in terms of this Also, the problem I have is the whole thing seems bizarre to me, that a prosecutor would not remember the reasons for a strike. Maybe that's the state of Supreme Court law is such that we have to affirm in an AEDPA case, but shouldn't a prosecutor have a record, a note of why a strike was made? Well, let me respond in several ways to your question, Judge Gould. First of all If this was a direct, if this was a direct appeal, I would not be very comfortable with affirming. Well, and of course it is not. But if it were a direct appeal, I would note to the Court that, as the Court is aware, that vore dire is an evolving process. And we know from the record in this case that at several points, not once, but more than once, the prosecutor accepted this jury with that juror. And at some point, ostensibly based on a change in the composition of the jury, the juror became objectionable at only that threshold level that requires a peremptory challenge. So that was after the defense had exercised one of its peremptories, is that correct? I believe that is correct, Your Honor. So the composition of the jury in the box at that point had changed? The composition had changed, and as has been pointed out by Judge Panner, African-American prospective jurors remained on the veneer, and there were African- American jurors on the petite jury. So two served on the jury and one was an alternate, is that correct? My recollection is that at least two served, and I think the ethnicity or the race of a third juror was not clear from the record. But was that third juror the alternate? I don't recall that. I don't recall that. So the ultimate answer to your question, though, Judge Gould, is insofar as those circumstances raised any red flags, namely the initial failure to recollect specific reasons, that was something to be addressed in the trial court in a hearing on that subject. And as Burkett v. Elam and Batson indicate, the burden remains with the petitioner at all times. And the petitioner didn't object on that basis and didn't point to the lack of corroboration or any possible impeachment with other sources of information. So where you have a factual finding made, and in this case one made favorably for the prosecutor, and endorsed on appeal, I think that more is required than the possible suspicion of another motivation. So is the answer to Judge Gould's earlier question, to your opposing counsel, that there is no direct Supreme Court authority that supports the statement in ye, that the simple inability to recall creates a negative inference from which we may make a finding of discrimination if there's no other evidence to reflect? That is my point. I did not understand Judge Gould to be asking the question that I was asking, which is with respect to the negative inference. That is nowhere, I did not see any indication of that in any Supreme Court authority. So in this case or in any other case where we have a draw, if you will, at step two, when we look through those other circumstances, each reviewing court that has evaluated the case has noted that the juror didn't simply respond about her misgivings about sitting in judgment of others, but volunteered that to the court, made known to the court that she did not wish to evaluate another person, and viewed her, wasn't satisfied that sitting in judgment of the facts was different than making a moral determination. So getting to step three, there were affirmative reasons that would explain one's discomfort with this juror. That's all that I have. Counsel, do you think there's any practical impediment to a prosecutor keeping some sort of record of their reasons for making a peremptory strike in light of Batson's existence? We couldn't give relief in an AEDPA case on that if the Supreme Court hasn't said it, but I'm still trying to understand if there's any real good reason for a prosecutor to not know why they struck a juror. Because I tried a number of cases, and I find it hard to imagine the prosecutor, either A, wouldn't remember, or B, if they didn't remember, that it wouldn't have been simple for them to keep notes of why they were making such a decision. Judge Gould, I think you're addressing two separate points, and the first point is as to the ultimate evaluation of credibility, and I think Judge Tolman observed this, we are not percipient to this process in the way that the trial judge was. And that deference is not just an empty, reflexive concept. Ostensibly, everyone takes their responsibility seriously, and the judge who finds the prima facie case here is mindful of that. As to whether or not there can be corroboration or other documentation of the stated reasons, I don't know in this case whether that happened or not, because the prosecutor was never asked further to articulate, and it may be surprising to the court that she did not have a recollection of excusing someone a day before. And I would simply say in response to that, as the court knows, that this is not a situation where the facts are being found in the first instance. She was found credible necessarily, and that was not an unreasonable determination, even if this Court might or might not have come to the same conclusion if the prosecutor were before Your Honor, Judge Gould. Thank you. Okay, thanks. Thank you, counsel. Mr. Perez, you have a minute and a half left. Under, however this case is reviewed, one thing that Batson tells us, it's not apparent reasons or speculative reasons for the discharge of the juror. It's the actual reasons. And it's not what the juror says. It's the intent of the prosecutor. And here, we don't know what the intent of the prosecutor was.  I believe it was the District Court of Appeal that specifically cited to the prospective juror's statement that she would have a difficult time sitting in judgment of others. And even though the prosecutor didn't cite that, going back to the question I asked you earlier about the deference, don't we have to give some deference to the fact that the record does suggest a nondiscriminatory reason that would have supported striking this juror? It may be on the record that it's nondiscriminatory. But the problem is it's the court's interpretation. It's the State's later interpretation of what happened. It's not the prosecutor's. But if AEDPA applies, and that is a finding by the State courts of a legitimate reason to strike, don't we have to give deference unless you can provide us with clear evidence that it's erroneous? I mean, I would agree that we do have to give deference to the State court where they actually make a finding. But here, I think the State court missed the point. Wasn't the point missed by the defender when he failed to interrogate the prosecuting attorney on his reasons or her reasons? That may be so, but I mean... Isn't that a good enough reason right there for us not to worry? The ultimate burden is on the defendant. Unquestionably. And if the prosecutor had really felt that there was some problem, shouldn't she have said or shouldn't he have said, let's hear from the prosecutor why they did it? That's a perfectly permissible way to handle a Batson challenge. I would agree, and that's why I think that a remand... The most recent case in this court addressing Batson, Alley v. Hickman, there's a thorough discussion of comparative analysis. That was not done in this case. So, you know, we can't compare jurors. We're all guessing. I mean, none of us really know. And even the trial judge didn't really know. I mean, there was a... I mean, defense counsel said, well, there were other jurors that were confused about reasonable doubt. And if we have to look at the juror outside of the vacuum and view the totality of the circumstances, well, then we have to go back and we have to start comparing all these other jurors, the jurors that remained, the jurors that were stricken, the notes. None of that was ever done. And I think that that's, I mean, this is a constitutional question. It may very well have been defense counsel. But, I mean, now then, the question is, you know, does it rise to the level of a Sixth Amendment violation for the poor defendant? And one of the other most important things that I've determined in this is, had this particular petitioner been represented in the district court, I think we would know, because I think there may have been an evidentiary hearing. There certainly would have been more of the Vordire transcripts included in the district court record, because from what I can see, they only addressed those that were attached by the petitioner himself, which addressed, you know, each particular juror in a vacuum. Mr. Perez, I let you go over about two and a half minutes. Thank you very much. The case just argued is submitted. Thank both counsel for your argument. The next two cases on the calendar, Nguyen v. Cate and Jordan v. United States, are ordered submitted on the briefs. We'll now hear argument in the case of United States v. Morial Luna.
judges: Gould, Tallman, Panner